**The STATE of Ohio, Appellee,**

v.

**NUCKLOS, Appellant.**

[Cite as *State v. Nucklos,* 171 Ohio App.3d 38, 2007-Ohio-1025.]

Court of Appeals of Ohio,
Second District, Clark County.

No. 06CA0023.

Decided March 9, 2007.

Stephen A. Schumaker, Clark County Prosecuting Attorney, and Carol O'Brien and David Rowland, Special Assistant Prosecuting Attorneys, for appellee.

John P. Flannery II, for appellant.

GRADY, Judge.

{¶ 1} Defendant, William Nucklos, appeals from his convictions on ten counts of trafficking in drugs, R.C. 2925.03(A), and the sentences imposed for those offenses pursuant to law.

{¶ 2} Defendant Nucklos is a licensed physician. In October 2002, law-enforcement officers executed a warrant to search his medical offices in Springfield and seize any evidence relevant to prove that defendant had prescribed controlled substances illegally. The officers seized defendant's patient records and a loaded shotgun found under his desk.

{¶ 3} Defendant was subsequently charged by indictment with ten counts of trafficking in drugs, R.C. 2925.03(A), and ten counts of illegal processing of drug documents, R.C. 2925.23(A). The state's theory was that defendant illegally prescribed the drug OxyContin and similar controlled substances used to manage

intractable pain to three patients on ten occasions because in doing so he failed to comply with specific diagnosis and treatment protocols required by law when those drugs are prescribed.

{¶ 4} At trial, the state offered the testimony of the three patients involved in the charges and the testimony of three undercover police officers who had posed as patients and also been prescribed drugs by defendant. The state also offered in evidence defendant's medical records concerning his treatment of those and over 200 other patients. Expert witnesses testified that those records reflect that like failures in diagnosis and treatment occurred with respect to defendant's other patients. The records were admitted as "other act" evidence pursuant to Evid.R. 404(B). On that same basis, the state offered evidence of the shotgun that was seized from defendant's office, as well as evidence showing that he had experienced serious financial difficulties.

{¶ 5} Defendant Nucklos testified that he believed he had complied with all requirements imposed by law for prescribing OxyContin. The only documentary evidence he introduced was a copy of the Hippocratic oath of physicians.

{¶ 6} The jury returned guilty verdicts on all ten counts of trafficking in drugs and all ten counts of illegal processing of drug documents. The trial court merged the illegal-processing-of-drug-document offenses into defendant's ten drug trafficking offenses pursuant to R.C. 2941.25 and convicted defendant of the ten trafficking offenses. The court sentenced defendant to serve a maximum available term of two years for each offense, to be served consecutively, for an aggregate term of 20 years.

{¶ 7} Defendant filed a timely notice of appeal. He presents eight separate "arguments," which we shall treat as assignments of error for purposes of App.R. 16(A)(3). By leave of court, an amicus curiae brief was filed by the Ohio State Medical Association concerning an error in a jury charge that defendant has assigned. Because we find that the trial court erred in giving the challenged charge and in admitting certain "other act" evidence, we need address only the assignments pertaining to those errors, because our rulings on them render the remaining assignments moot. App.R. 12(A)(1)(c).

ASSIGNMENT OF ERROR "F"

{¶ 8} "The court failed to instruct the jury correctly as to the law."

{¶ 9} A jury charge must be a distinct and unambiguous statement of the law as applicable to the facts before the court. In submitting a case to a jury, the court must " 'separate and definitely state * * * the issues of fact made in the pleadings, accompanied by such instructions as to each issue as the nature of the case may require.' " *Marshall v. Gibson* (1985), 19 Ohio St.3d 10, 12, 19 OBR 8, 482 N.E.2d 583, quoting *Baltimore & Ohio RR. Co. v. Lockwood* (1905), 72

Ohio St. 586, 74 N.E. 1071, paragraph one of the syllabus. Reversible error arises if the jury charge is incomplete or misleading or fails to define legal terms that are essential to the jury's deliberative process. *Marshall.* See, also, *Szymczak v. Midwest Premium Fin. Co.* (1984), 19 Ohio App.3d 173, 19 OBR 280, 483 N.E.2d 851.

{¶ 10} R.C. 2925.03, trafficking in drugs, provides:

{¶ 11} "(A) No person shall knowingly do any of the following:

{¶ 12} "(1) Sell or offer to sell a controlled substance;

{¶ 13} "* * *

{¶ 14} "(B) This section does not apply to any of the following:

{¶ 15} "(1) Manufacturers, *licensed health professionals authorized to pre-scribe drugs,* pharmacists, owners of pharmacies, and other persons whose conduct is in accordance with Chapters 3719., 4715., 4723., 4729., 4730., 4731., and 4741. of the Revised Code." (Emphasis added.)

{¶ 16} R.C. Chapter 3719 governs controlled substances. R.C. 3719.06(A)(1) authorizes licensed health professionals to prescribe controlled substances "if acting in the course of professional practice, in accordance with the laws regulating the professional's practice, and in accordance with rules adopted by the state board of pharmacy."

{¶ 17} R.C. Chapter 4731 governs licensed physicians. R.C. 4731.41 prohibits the practice of medicine "without the appropriate certificate from the state medical board to engage in the practice." Pursuant to its licensing authority, the State Medical Board has promulgated Ohio Adm.Code 4731–21–02, et seq., governing a physician's utilization of any prescription drug for the treatment of intractable pain on a prolonged basis. The regulation contains extensive provisions governing a physician's initial diagnosis, a medical diagnosis, formulation of an individualized treatment plan, diagnosis of an intractable pain condition, referral of the patient to a specialist in the body part affected, the need to obtain records of the patient's prior treatment, maintaining records detailing those procedures, and similar requirements.

{¶ 18} It is undisputed that defendant Nucklos acted as a licensed health professional for purposes of R.C. 3719.06(B)(1) when he committed the violations of R.C. 2925.03(A)(1) alleged and that the drugs he prescribed for the three patients concerned in the ten charges against him, as well as numerous other patients, are controlled substances for purposes of R.C. 2925.03(A)(1). Defendant argues that the trial court erred in its instruction to the jury regarding the burden of proof that R.C. 2925.03(B)(1) imposes, specifically, that the trial court erred when it instructed the jury that it was defendant's burden to prove that he

acted in accordance with the laws and regulations governing prescription of a controlled substance.

{¶ 19} Criminal liability requires proof that the accused engaged in a voluntary act or omission prohibited by law with the requisite degree of culpability for each element of the offense the law specifies. R.C. 2901.21(A). Further, R.C. 2901.05 provides:

{¶ 20} "(A) Every person accused of an offense is presumed innocent until proven guilty beyond a reasonable doubt, and the burden of proof for all elements of the offense is upon the prosecution. The burden of going forward with the evidence of an affirmative defense, and the burden of proof, by a preponderance of the evidence, for an affirmative defense, is upon the accused.

{¶ 21} "(B) As part of its charge to the jury in a criminal case, the court shall read the definitions of 'reasonable doubt' and 'proof beyond a reasonable doubt,' contained in division (D) of this section.

{¶ 22} "(C) As used in this section, an 'affirmative defense' is either of the following:

{¶ 23} "(1) A defense expressly designated as affirmative;

{¶ 24} "(2) A defense involving an excuse or justification peculiarly within the knowledge of the accused, on which he can fairly be required to adduce supporting evidence."

{¶ 25} In charging the jury with respect to the drug trafficking violations alleged, the court instructed the jury:

{¶ 26} "The defendant is charged in Count 1 with trafficking in OxyContin. Before you can find the defendant guilty of this offense, *you must find beyond a reasonable doubt* that on or about December 6, 2001, at Clark County, Ohio, he did knowingly sell or offer to sell the Schedule II controlled substance OxyContin to Darrin Briggs; and *his conduct was not in accordance with Chapters 3719, 4729, and 4731 of the Ohio Revised Code.*

{¶ 27} "A person acts 'knowingly' regardless of his purpose when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist.

{¶ 28} " 'Sale' includes delivery, barter, exchange, transfer, or gift or offer thereof; and each such transaction made by any person, whether as principal, proprietor, agent, servant, or employee. The issuing of a prescription for controlled substances constitutes a sale of controlled substances.

{¶ 29} " 'Offer' means to present for acceptance or rejection.

{¶ 30} "Typically a physician who prescribes a controlled substance is exempt from the provisions of law dealing with drug trafficking; however, a physician loses that exemption when his conduct is not in accordance with Chapters 3719, 4729 and 4731 of the Ohio Revised Code.

{¶ 31} "If you find that the defendant was not acting as a physician in the course of the bona fide treatment of a patient because he issued a prescription for some reason or reasons other than a legitimate medical purpose, you must find that his conduct was not in accordance with Chapters 3719, 4729, and 4731 of the Ohio Revised Code.

{¶ 32} " 'Bona fide' means in, or with, good faith, honestly, openly, and sincerely, without deceit or fraud.

{¶ 33} *"If you find that the State proved beyond a reasonable doubt all of the essential elements of trafficking in OxyContin, you will go on to determine whether the defendant has established by a preponderance of the evidence the affirmative defense that he was a physician acting in the course of the bona fide treatment of patients.*

{¶ 34} "On the other hand, if you find that the State failed to prove beyond a reasonable doubt *any one of the essential elements* of trafficking in OxyContin, your verdict on that charge must be not guilty.

{¶ 35} "Counts 2 through 10.

{¶ 36} "All of the instructions and definitions for Count 1, which are set forth above, apply to Counts 2 through 10 as well." (Emphasis added.)

{¶ 37} Defendant argues that the instruction the court gave was confusing and inconsistent and that it improperly transferred the burden of proof on the proposition in R.C. 2925.03(B)(1) to him. We agree.

{¶ 38} Because R.C. 2925.03(B)(1) is not expressly designated as an affirmative defense, an accused may be required to prove the particular facts and circumstances that R.C. 2925.03(B)(1) concerns, by a preponderance of the evidence, only if those matters "involve[d] an excuse or justification peculiarly within the knowledge of the accused, on which he can fairly be required to adduce supporting evidence." R.C. 2901.05(C)(2). However, because the burden to prove all elements of the offense is on the prosecution, and never shifts, where a particular affirmative defense goes to or negates an element of the offense which the prosecution must prove in order to convict, the burden of its proof does not shift to the defendant because due process requires the state to prove every element of the crime charged, beyond a reasonable doubt. *In re Winship* (1970), 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368; *Patterson v. New York* (1977), 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281; *State v. Frost* (1979), 57 Ohio St.2d 121, 11 O.O.3d 294, 387 N.E.2d 235.

{¶ 39} R.C. 2925.03(A)(1) prohibits knowingly selling or offering to sell a controlled substance, and issuing a prescription for a controlled substance is a form of "sale." However, the privilege conferred on licensed physicians by R.C. 3719.06(A)(1) to prescribe controlled substances exempts those licensees from criminal liability for conduct that would otherwise violate R.C. 2925.03(A)(1) when they prescribe a controlled substance, unless in prescribing the drug the physician fails to act in accordance with applicable laws and regulations. R.C. 2925.03(B)(1). Because proof of the failure is necessary to a finding of the physician's criminal liability in that circumstance, that failure is an element of the criminal conduct that R.C. 2925.03(A)(1) prohibits when the accused is a licensed physician and the conduct alleged to create criminal liability involves "sale" of a controlled substance by writing a prescription for it. Being an element of the violation of R.C. 2925.03(A)(1) alleged, proof that the defendant physician did not act in accordance with applicable laws remains the state's burden, on the reasonable-doubt standard, and does not shift to the defendant on the theory that negating that element constitutes an affirmative defense. *Winship; Patterson; Frost.*

{¶ 40} That is not to say that R.C. 2925.03(B)(1) does not implicate an affirmative defense. It does, but only to the extent that an accused must prove that he fits within one of the exempted occupations the section identifies. At least with respect to physicians who are "licensed health professionals," that is an insignificant burden and in the present case was a matter the state conceded and on which the proof that it offered was based. That proof likewise demonstrates the privilege that R.C. 3719.06(A)(1) confers on licensed physicians to prescribe controlled substances. That in exercising the privilege, defendant was not "acting in the course of professional practice, in accordance with the laws regulating the professional's practice," which deprives him of the privilege in order to create criminal liability, remains a matter on which the state has the burden of proof.

{¶ 41} The Supreme Court of Ohio has not addressed this issue specifically. However, in *State v. Sway* (1984), 15 Ohio St.3d 112, 15 OBR 265, 472 N.E.2d 1065, the Supreme Court held:

{¶ 42} "A physician who unlawfully issues a prescription for a controlled substance not in the course of the bona fide treatment of a patient is guilty of selling a controlled substance in violation of R.C. 2925.03." Id. at syllabus. That positive statement of the law comports with the view that it is the state's burden to prove the basis for criminal liability in R.C. 2925.03(B)(1). Further, in *Sway* the court noted that the bill of particulars the state had filed alleged the defendant physician's failure to conform to the standards of his profession in prescribing the medication concerned. Likewise, in the present case, the indict-

ment charging defendant with ten violations of R.C. 2925.03(A)(1) alleges, with respect to each of the ten counts charged, that defendant's "conduct was not in accordance with Chapters 3719, 4729, and 4731 of the Revised Code, in violation of 2925.03 of the Revised Code." The state's charging document thus set up the alleged failure as an element of the offenses with which he was charged.

{¶ 43} The proposed instructions that the state filed indicates that the state viewed the alleged failure as part of its burden of proof. The proposed instruction states:

{¶ 44} "If you find that the defendant physician authorized prescriptions for a controlled substance not in the course of the legitimate treatment of a patient, and not having a bona fide or good faith intention to practice medicine, you must find that defendant acted outside the scope of Chapters 4729, 4731, and 3719 of the Ohio Revised Code."

{¶ 45} That the state viewed defendant's alleged failures to act in accordance with applicable laws and regulations as part of the state's burden of proof is also apparent from the transcript of the conference on the instructions the court proposed to give. When the court indicated its intent to also give an affirmative defense instruction, Attorney Rowland, who had been assigned by the State Pharmacy Board to assist in the prosecution, expressed his "concern about indicating that R.C. 2925.03(B)(1) is an affirmative defense," and further told the court that "the Court's instructions on what the State must prove, I think, appropriately indicates what the State must prove," adding that "counsel for the defense has indicated that in his proposed instructions." Defense counsel joined the state in the concerns it expressed, asking that his proposed instruction instead be given.

{¶ 46} Responding to these contentions of counsel, the court stated:

{¶ 47} "As far as the issue of whether or not a physician acting in the course of the bona fide treatment of patients, whether or not that's an affirmative defense, the Court would concede that it is kind of duplicative in this case because one of the elements that the State's required to prove is that the defendant's conduct was not in accordance with certain chapters of the Revised Code; and presumably if the State proves that, then that should be the end of the matter.

{¶ 48} "Because an affirmative defense would be that he did act in accordance with those provisions of the Revised Code, and it is kind of duplicative; but in the Court's reviewing of the Ohio Jury Instructions, it did have acting in the course of the bona fide treatment of patients as an affirmative defense.

{¶ 49} "And, again, even though there's some overlap—and I agree with counsel that it does seem to be an element of the State's case—I think for purposes of just maybe making it a little more clear to the jury that that's the

specific element of the offense that the defendant is challenging. I think I'll leave it as an affirmative defense."

{¶ 50} The portion of Ohio Jury Instructions ("OJI") to which the court referred is Section 525.03, which contains the following comment at paragraph 12:

{¶ 51} "R.C. 2925.03(B) creates certain exceptions to the prohibitions of R.C. 2925.03(A). The Committee believes these are affirmative defenses under R.C. 2901.05(C)(2) or in the nature of affirmative defenses and must be treated as such. See *State v. Little* (March 14, 1991) [8th Dist. No. 57033, 1991 WL 34870], 1991 Ohio App. LEXIS 1053; *State v. Hassell* (May 5, 1993) [1st Dist. No. C–920530, 1993 WL 231701], 1993 Ohio App. LEXIS 2364."

{¶ 52} Neither decision to which the OJI comment refers, *Little* or *Hassell*, involved alleged violations of R.C. 2925.03(A)(1). Rather, both involved charges of carrying concealed weapons in violation of R.C. 2923.12(A)(2), the weapon being a handgun. Paragraph (C)(1) of R.C. 2923.12 states: "This section does not apply to * * * law enforcement officers, authorized to carry concealed weapons * * * and acting within the scope of their duties."

{¶ 53} The defendant in *Hassell* was an officer of the Cincinnati Metropolitan Housing Authority who claimed that he was acting in the course of his official duties when he shot a suspect. The defendant in *Little* was a security guard who had been authorized by a local police department to carry a firearm that was discovered in his knapsack. In both cases, the appellate courts held that R.C. 2923.12(C)(1) created an affirmative defense to criminal liability.

{¶ 54} Both the affirmative defense in R.C. 2923.12(C)(1) pertaining to law-enforcement officers and the criminal liability for a violation of R.C. 2923.03(A)(1) imposed on licensed health professionals by R.C. 2925.03(B)(1) depend on the exercise of a privilege conferred by law. However, the particular exercise of the privilege contemplated by R.C. 2923.12(C)(1), an officer's acting in the course of official duties, involves conduct that is not an element of the offense to which it applies, carrying a concealed weapon in violation of R.C. 2923.12(A). On the other hand, as we explained, the failure to act in accordance with law contemplated by R.C. 2925.03(B)(1) is an element of the conduct prohibited by R.C. 2925.03(A)(1) when it is committed by a licensed physician in the exercise of the privilege conferred on him. Therefore, per *Winship*, the burden of its proof cannot shift to the accused, irrespective of its similarity to other affirmative defenses such as R.C. 2923.12(C)(1).

{¶ 55} The rule of *Winship* prevents the burden of proving the matters that R.C. 2925.03(B)(1) involves from being a defense on which an accused "can fairly be required to adduce supporting evidence," which is a necessary feature of an affirmative defense defined by R.C. 2901.05(C)(2). In addition, per that section,

48

the affirmative defense must be one "involving an excuse or justification peculiarly within the knowledge of the accused."

{¶ 56} Whether a law-enforcement officer was acting within the course of his official duties involves a matter of subjective intent that is "peculiarly" within the officer's knowledge. Defendant Nucklos's alleged failure to comply with the requirements imposed by Ohio Adm.Code 4731–21–02 et seq. would involve matters that are within his knowledge, but not *peculiarly* (characteristically, distinctly, or exceptionally) so. Those regulations impose extensive record-keeping requirements pertaining to each duty they impose on physicians who prescribe controlled substances for intractable and persistent pain. As it did here, the state may offer evidence proving that a physician's records or lack thereof evidence the violation of law that R.C. 2925.03(A)(1) and (B)(1) involves, without any proof of why the defendant physician acted as he did. They are matters of objective fact for which a physician must, per the regulations, maintain records that reflect that those matters occurred.

{¶ 57} For the foregoing reasons, we believe that the advice in paragraph 12 of Section 525.03 of the OJI is incorrect and misleading, and, as it did in the present case, that it has the capacity to lead the trial courts to commit error. OJI is a respected and authoritative source of the law, but it is merely a product of the Ohio Judicial Conference and not binding on the courts. Therefore, adherence to its terms does not insulate a court from reversal when reversible error is committed. We strongly urge the editors of OJI to expunge its comment.

{¶ 58} By adhering to OJI as it did, telling the jury that proof of his compliance with applicable laws and regulations is an affirmative defense that defendant had the burden to prove by a preponderance of the evidence, and that in order to convict the jury must find beyond a reasonable doubt that defendant's conduct in that same regard was not in accordance with law, the instruction the court gave was internally inconsistent and confusing. By its terms, the instruction also shifted the burden to prove an element of the offense to the defendant, which *Winship* prohibits. The error is reversible.

{¶ 59} As a final matter, the state contends that defendant acquiesced in the court's error. The record does not support the state's contention.

{¶ 60} Defense counsel's alleged "acquiescence" was to the court's definition of "bona fide," not to the affirmative-defense instruction the court proposed to give. The transcript reflects that both the state and defendant proffered instructions that were consistent with the rule of *Sway* and set up no affirmative defense, and that defendant objected to the court's failure to give his requested instruction. When defendant stated that he intended his objection to the court's affirmative-

defense instruction to be sufficient for purposes of Crim.R. 30, which requires a particularized objection "before the jury retires to consider its verdict," the court twice replied, "Sure." Therefore, we believe that the error was preserved, not waived.

{¶ 61} Defendant's assignment of error "F" is sustained.

DEFENDANT'S ASSIGNMENT OF ERROR "C"

{¶ 62} "The prior 'bad act' evidence, the so-called civil judgment, was inadmissible and unduly prejudiced defendant before the jury; the court should have declared a mistrial at the beginning of the trial; now, this court must vacate the conviction, and remand for a new trial."

{¶ 63} During his opening statement, the special prosecutor assigned by the State Pharmacy Board told the jury:

{¶ 64} "One of your first witnesses that you're going to hear is a gentleman from the Ohio Bureau of Workman's Compensation. He's going to tell you that there was a civil judgment against the defendant several years ago, a very substantial civil judgment, a civil judgment that tells us an idea of why this doctor would practice the way you're going to hear he did.

{¶ 65} "He needed some money. He needed a lot of money, and he needed it fast; and how did he do that? A doctor who has an office in Columbus decided one day a week, he'll come to this county, this city, and open an office one day a week.

{¶ 66} "You're going to hear that the patients that he saw were only allowed to come in with cash, none of this insurance stuff. Cash. And a substantial sum of cash before you get to see the doctor; and then what the doctor did with you was basically, 'What do you want?' And those patients got the drugs that they wanted as long as they paid the cash.

{¶ 67} "Now, the State doesn't have to show motive, doesn't have to prove motive; and the Judge will tell you that. But we've all got to wonder why would somebody do these things? Why would a doctor traffic in drugs? Why would a doctor sell drugs when he could be treating legitimate patients? So you'll hear some of that testimony as to why."

{¶ 68} Defendant didn't object to the prosecutor's statement when it was made. Instead, after the conclusion of the prosecutor's opening statement, defendant moved for a mistrial, arguing that by mentioning the civil judgment against defendant the prosecutor had "poisoned the minds of these jurors in an inappropriate way."

{¶ 69} The trial court overruled the defendant's motion on a finding that evidence of the civil judgment was admissible pursuant to Evid.R. 404(B) to show

motive. The court also found that the probative value of the evidence is not outweighed by the danger of prejudice or confusion or misleading the jury. The court went on to give the jury a cautionary instruction that it could consider any evidence of a civil judgment only to show defendant's "motive for why he may or may not have committed the crimes with which he is charged" and not for any other purpose, including "bad character," or that defendant "would have acted in conformity with that bad character with respect to the charges with which he's charged today." The court repeated the cautionary instruction after the evidence was admitted.

{¶ 70} We find no error in the trial court's ruling. The evidence that the prosecutor told the jury it would hear concerning a civil judgment against defendant was admissible per Evid.R. 404(B) to prove his motive for committing the crimes alleged: a need for money. No mistrial was warranted, and the court's cautionary instructions avoided any undue prejudice.

{¶ 71} Defendant changes his tack on appeal. He argues that the prosecutor's statement was objectionable because the evidence the state subsequently introduced through testimony of an employee of the Bureau of Workers' Compensation failed to show that a civil judgment had been granted against defendant when the alleged offenses took place. Rather, the witness testified that an audit performed in 2000 found that defendant substantially overbilled the bureau for services and that defendant owed the Bureau approximately $623,000 in reimbursement.

{¶ 72} The fact that the state's evidence failed to support the particulars of the prosecutor's opening statement concerning the existence of a civil judgment does not render the statement objectionable or justify a mistrial. The variance was available for defendant's exploitation in cross-examination. Defendant made no attempt to do that with respect to the alleged civil judgment, and instead challenged the witness's testimony concerning the findings the audit produced and defendant's knowledge of them.

{¶ 73} Defendant's contention at trial was that he had been "severely prejudiced by this testimony" of alleged overbilling. No doubt, the evidence not only showed an alleged motive for the crimes with which defendant was charged, but it also implied dishonesty. However, it was not so unfairly prejudicial that it should have been excluded pursuant to Evid.R. 403. *State v. Geasley* (1993), 85 Ohio App.3d 360, 619 N.E.2d 1086.

{¶ 74} We find no abuse of discretion on the error assigned. The cautionary instructions the trial court gave avoided any undue prejudice. Defendant's assignment of error "C" is overruled.

DEFENDANT'S ASSIGNMENT OF ERROR "D":

{¶ 75} "The state's character assassination continued with other 'bad acts' evidence including a seized shotgun brandished before the jury, irrelevant patient medical records, slanderous expert testimony on the inadmissible records, *faux* pain patients (the undercover agents), and objectionable hearsay allegations."

{¶ 76} In this assignment of error, defendant contends that the trial court erred when it admitted certain evidence pursuant to Evid.R. 404(B): a loaded shotgun found in the search of defendant's office and seized by law-enforcement officers and medical records of over 200 other patients concerning which the state's expert witness testified, as well as the testimony of three undercover police officers that the state also offered.

{¶ 77} The state responds that the loaded shotgun was admissible to show defendant's "state of mind," i.e., that because his practice was run on a cash-payment basis, "the shotgun was to protect himself from the drug dealers he was supplying with OxyContin." The state made that same contention at trial.

{¶ 78} Evid.R. 404(B) and its companion statutory provision, R.C. 2945.59, are concerned with extrinsic acts. "An extrinsic act is simply any act which is not part of the operative facts or episode of the case; i.e., it is 'extrinsic' usually because of a separation of time, space, or both." Weissenberger's Ohio Evidence Treatise (2006), Section 402.21. "Generally, extrinsic acts may not be used to suggest that the accused has the propensity to act in a certain manner." *State v. Crotts,* 104 Ohio St.3d 432, 2004-Ohio-6550, 820 N.E.2d 302, ¶ 18.

{¶ 79} Obviously, defendant did not use the loaded shotgun to write the prescriptions for the three patients whose diagnosis and treatment by him the indictment concerns. Its presence in his office is remote from the operative facts of the criminal conduct alleged. Nevertheless, insofar as the shotgun was in defendant's office while those patients were examined and treated there, which is a reasonable implication, the shotgun and its presence are not matters separated by time and space from the criminal offenses in which defendant is alleged to have engaged. Therefore, evidence that the loaded shotgun was found in defendant's office is not "extrinsic" to the criminal conduct alleged, and Evid.R. 404(B) is not implicated.

{¶ 80} The evidence the state offered concerning defendant's treatment of other patients, the three undercover officers and over 200 others whose medical records were introduced through the state's expert witnesses, is more problematic.

{¶ 81} R.C. 2901.21(A) conditions criminal liability on findings that an accused committed an act or omission prohibited by law, with the requisite degree of

mental culpability.  R.C. 2925.03(A)(1), the drug-trafficking statute defendant was accused of violating, requires proof that the accused acted "knowingly."  R.C. 2901.22(B) provides:

{¶ 82} "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature.  A person has knowledge of circumstances when he is aware that such circumstances probably exist."

{¶ 83} Because a culpable mental state involves an accused's state of mind, it typically must be proved by circumstantial evidence:  evidence of one thing from which another may be inferred.  Evidence of the conduct prohibited by law ordinarily permits an inference that the accused acted knowingly when he engaged in the conduct.  Evidence of matters extrinsic to that prohibited conduct in which the accused also engaged may also be offered for that purpose pursuant to Evid.R. 404(B), subject to two limitations.

{¶ 84} Per the first sentence of the rule, "[e]vidence of the other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith."  The provision extends the exclusionary principle of Evid.R. 404(A) to extrinsic evidence offered for a purpose that Evid.R. 404(A) prohibits.  Thus, "[g]enerally, extrinsic acts may not be used to suggest that the accused has the propensity to act in a certain manner." *State v. Crotts*, 104 Ohio St.3d 432, 2004-Ohio-6550, 820 N.E.2d 302, ¶ 18.

{¶ 85} "Rule 404(B) creates a forbidden two-step causal relationship, where an extrinsic act inferentially indicates a character trait or general propensity, which in turn inferentially indicates the commission of the act which is part of the operative facts of the case.  * * * The rule, in essence, prohibits the argument which would suggest that because a person acted in a particular way on a distinct, specific occasion, that person likely acted in the same way with regard to the operative facts of the instant litigation."  Weissenberger, Section 404.21.

{¶ 86} After stating the basic rule of exclusion, the second sentence of Evid.R. 404(B) indicates that evidence of other crimes, wrongs, or acts may be admissible to prove consequential facts other than conforming conduct.  The list of purposes set out is not exclusive or exhaustive.  Neither do they constitute exceptions to the prohibitions in the prior sentence.  They are merely illustrative of purposes for which extrinsic evidence may otherwise be offered to prove a fact other than propensity and conforming conduct when that fact is probative of the actor's mental state and relevant to the particular degree of culpability an offense involves.  The burden is on the proponent of extrinsic act evidence to demonstrate that the relevancy of the extrinsic act does not pertain to character and

conforming conduct. *State v. Skatzes,* 104 Ohio St.3d 195, 2004-Ohio-6391, 819 N.E.2d 215.

■■■ {¶ 87} Relying ˙on Evid.R. 404(B), the state argues that evidence concerning defendant's treatment of other patients in a way similar to his treatment of the three named in the indictment was admissible to show "intent, preparation, plan, knowledge and absence of mistake or accident." In support of its argument, the state contends that the evidence of defendant's treatment of other patients shows that the conduct alleged in the indictment was not a mistake, because his treatment of these other patients was the same, he never obtained records of prior medical treatment for any of his patients, and made no referrals of any of them. The state further contends that the testimony of its three experts was admissible in order to make those showings.

{¶ 88} The state's argument relies on the very inferential pattern that Evid.R. 404(B) prohibits: proof of an extrinsic act that inferentially indicates a propensity that, in turn, inferentially indicates commission of an act that is part of the operative facts of the offenses alleged. Weissenberger, Section 404.21. Stated more simply, because he did it once, it is reasonable to find that he did it again. We necessarily reject the state's arguments. Nevertheless, we will consider the state's contentions that the other-act evidence concerned was admissible per Evid.R. 404(B) because it was probative of defendant's intent, preparation, plan, knowledge and absence of mistake or accident.

{¶ 89} It is fundamental to any of the matters in Evid.R. 404(B) and R.C. 2945.59 that in order for other-act evidence to be admissible to prove it, the matter must be relevant to a question "at issue" in the litigation. *State v. Smith* (1992), 84 Ohio App.3d 647, 617 N.E.2d 1160. Because both the rule and statute codify an exception to the common law, they must be strictly construed against admissibility of other-act evidence. *State v. Burson* (1974), 38 Ohio St.2d 157, 67 O.O.2d 174, 311 N.E.2d 526.

{¶ 90} To be admissible, the other-act evidence must tend to show by substantial proof one or more of the things the rule or statute enumerates. *State v. Broom* (1988), 40 Ohio St.3d 277, 533 N.E.2d 682. Such evidence is never admissible when its sole purpose is to establish that the defendant committed the act alleged in the indictment. *State v. Flonnory* (1972), 31 Ohio St.2d 124, 60 O.O.2d 95, 285 N.E.2d 726. Rather, the evidence must tend to prove one or more of the matters in Evid.R. 404(B), which in turn is itself relevant to prove the criminal offenses alleged. *State v. Crotts.*

{¶ 91} Defendant testified that he believed that he had complied with all applicable regulations when prescribing OxyContin to his patients. That is evidence concerning defendant's state of mind, and extrinsic evidence is admissi-

ble to rebut it if the evidence might tend to prove that defendant understood the wrongful nature of his acts. For example, evidence that a prior, similar wrongful act on a defendant's part has been the subject of his arrest or conviction or prior law-enforcement encounters would be probative of his knowledge that his conduct was wrongful. *State v. Greer* (1981), 66 Ohio St.2d 139, 20 O.O.3d 157, 420 N.E.2d 982.

{¶ 92} Evidence that defendant engaged in the same wrongful conduct when he treated other patients does not demonstrate that when he treated the patients the charges in the indictment involve, defendant acted in the knowledge that his conduct was wrongful. It merely proves prior, conforming conduct, and in that regard is inadmissible per Evid.R. 404(B).

{¶ 93} Defendant did not claim that his alleged failure to act in accordance with applicable law was accidental. To the extent that his claim was one of a mistaken belief, which likewise involves his intent, evidence of the defendant's extrinsic acts is admissible to prove that defendant had on prior, similar occasions acted in accordance with law. Evidence that defendant had likewise failed to act in accordance with law on other, similar occasions is not probative that his alleged criminal conduct was the product of a mistake. It is merely proof of conforming conduct and prohibited by Evid.R. 404(B).

{¶ 94} Defendant's identity was not in issue with respect to the charges alleged. His motive was in issue, and extrinsic act evidence concerning his financial difficulties was admissible to prove that he had a specific reason to commit the criminal acts charged. Evidence of his treatment of other patients was not probative of his motive.

{¶ 95} Extrinsic evidence is admissible to prove a defendant's scheme, plan, or system when the evidence is probative of a sequence of events leading up to the crime charged or preparatory of the crime charged. Weissenberger, Section 404.28. Defendant's diagnosis and treatment of other patients preceded the crimes charged or were contemporaneous with those crimes. However, they were not a part of a sequence of events constituting a scheme, plan, or system to commit the crimes alleged. They were merely more of the same.

{¶ 96} Nothing in the state's evidence concerning defendant's treatment of his other patients is probative of whether he failed to act in accordance with law when he committed the crimes alleged in the indictment, except that as evidence it demonstrates a propensity to commit the crimes charged because it portrays conforming conduct. Evidence is inadmissible for that purpose. Evid.R. 404(B).

{¶ 97} The trial court abused its discretion when it admitted evidence of defendant's extrinsic acts in treating patients other than the three whose treatment forms the charges against defendant in the indictment. Unlike the issue of

the affirmative defense instruction, which is confined to defendant's conviction for drug trafficking, R.C. 2925.03(A)(1), this error also goes to the charges for defendant's violation of R.C. 2925.23(A), illegal processing of drug documents, precluding conviction on the R.C. 2925.23(A) violations alleged.

{¶ 98} Defendant's assignment of error "D" is sustained. Having sustained defendant's assignments of error "F" and "D," we will order defendant's convictions reversed and the cause remanded for further proceedings consistent with this opinion.

Judgment accordingly.

WOLFF, P.J., and FAIN, J., concur.