[Cite as *Lyndhurst v. Smith*, 2012-Ohio-2920.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 97045**

# CITY OF LYNDHURST

PLAINTIFF-APPELLEE

vs.

# GREGORY M. SMITH

DEFENDANT-APPELLANT

## JUDGMENT:
## REVERSED AND REMANDED

Criminal Appeal from the
Lyndhurst Municipal Court
Case Nos. 09 CRB 00420 and 10 CRB 00271

**BEFORE:** Kilbane, J., Boyle, P.J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:** June 28, 2012

**ATTORNEY FOR APPELLANT**

R. Brian Moriarty
R. Brian Moriarty, L.L.C.
2000 Standard Building
1370 Ontario Street
Cleveland, Ohio 44113

**ATTORNEYS FOR APPELLEE**

Michael E. Cicero
Vincent A. Feudo
Nicola, Gudbranson & Cooper
1400 Republic Building
25 West Prospect Avenue
Cleveland, Ohio 44115-1000

MARY EILEEN KILBANE, J.:

**{¶1}** Defendant-appellant, Gregory M. Smith ("defendant"), appeals from his convictions for disorderly conduct and violating a criminal temporary protection order. For the reasons set forth below, we conclude that defendant was denied a fair trial because of the admission of prejudicial other-acts evidence and cumulative error. Therefore, we reverse and remand for further proceedings consistent with this opinion.

**{¶2}** On May 29, 2009, Kevin Michaels ("Kevin"), LaToyia Delaine ("LaToyia") and Terence Delaine ("Terence") (or collectively referred to as "the Delaines") filed affidavits accusing defendant of aggravated menacing in violation of Lyndhurst Codified Ordinances 636.04(a).[1] On June 1, 2009, the trial court entered a criminal protection order barring defendant from contacting, abusing, and threatening the complainants. On April 22, 2010, defendant was charged with going on to Kevin's property, tapping on his window, and speaking with him in violation of the criminal protection order.

---

[1]In relevant part, this ordinance states:

(a) No person shall knowingly cause another to believe that the offender will cause serious physical harm to the person or property of the other person, such other person's unborn, or a member of such other person's immediate family.

**{¶3}** The matters were consolidated and proceeded to a jury trial on April 27, 2011. At the start of trial, the defense moved to exclude testimony and police reports pertaining to defendant's prior conviction for assaulting a former neighbor in Lakewood, Ohio. The city argued that the evidence was relevant to the belief of the complainants that defendant would cause them serious physical harm because defendant allegedly told them that he had "gotten away with" beating up a former neighbor. The trial court denied the motion in limine as it pertained to testimony regarding the prior acts and deferred ruling on the police report and other exhibits from this matter. The city presented testimony from LaToyia, Terence, Kevin, and Lyndhurst police officer James Johnson ("Officer Johnson").

**{¶4}** LaToyia testified that she and her husband live next door to defendant on Fairlawn Road, and Kevin lives on the other side of defendant's house. After the Delaines moved to the neighborhood in July 2008, they were friendly with defendant, and he helped them with various chores. LaToyia testified that the defendant began to do things that irritated her. He arranged a play date for his sons and her four-year-old daughter, but did not first ask permission from her or Terence, and he frequently came over unannounced. As a result, the Delaines began to distance themselves from him. After this, LaToyia testified that she lived in "fear that he would possibly take" the child, so Terence stopped working the night shift.[2] She also stated that defendant repeatedly bragged "about how he beat up an elderly male in Lakewood."

---

[2]Terence testified, however, that he changed shifts prior to moving into the

**{¶5}** With regard to the charges at issue, LaToyia stated that when they returned to their home on May 17, 2009, defendant was in his driveway preparing to leave. He then screamed that they were going to "get theirs." She stated:

> To me, I don't know if this man has a gun or what. I know it's a possibility. To me that seems like you're dead, you're going to get yours. [Based on] his irate behavior, and the fact that I have knowledge through the papers, through the Lakewood incident, that he, you know, beat up an elderly man.

**{¶6}** The Delaines exchanged insults with defendant, and defendant's wife told LaToyia to "shut up and f--k off," so LaToyia called the police and later signed a criminal complaint against him. She also stated that Kevin told defendant to cool down, but he remained on his own property during the incident.

**{¶7}** LaToyia was also permitted to testify that she is fearful of defendant and avoids him, and over the objection from the defense, she was permitted to testify about "unusual" occurrences in the neighborhood and stated that she found dead squirrels in the backyard. She was also permitted to state, over the objection from the defense, that her husband's car fob device was missing and she speculated that defendant had it and activated it during the night. In addition, she stated that she observed defendant fighting with another neighbor, and that defendant spat on the other man during this incident.

---

house next door to defendant.

**{¶8}** Terence testified that his daughter would spend time at defendant's home, but she would be "screaming, crying" when she returned. Terence believed that something was not right because defendant always wanted girls at his house and "[n]ever ever boys." He also testified that in October 2008, he observed defendant arguing with a man who "looked like somebody must have gave somebody some bad drugs," and defendant spat on the man and shoved him.

**{¶9}** Prior to the November 2008 altercation, Terence went to defendant's house to confront him about a pile of leaves in Terence's driveway. Terence testified that defendant was drunk and belligerent. He was permitted to testify that "all [defendant] does is drink," and that he has seen defendant drink a six-pack within an hour. Terence said "as long as you don't spit on me we won't have problem." At that point, Terence then "saw him spit, and * * * retaliated" by punching defendant in the eye, shattering defendant's occipital bone. Defendant unsuccessfully attempted to have Terence prosecuted for felonious assault, and both men were charged with disorderly conduct. Terence stated that he did not believe that he was fairly charged because he was defending himself. Following that incident, Terence contacted the Lakewood Clerk of Courts and obtained the records concerning defendant's 2004 neighbor dispute in that city.

**{¶10}** Terence also stated that defendant had placed garbage cans in front of Terence's garage door that blocked his exit, and that defendant had somehow obtained his car fob device and had repeatedly locked and unlocked his car to harass and annoy him.

Following that incident with defendant, dead animal carcasses had been placed in Terence's backyard. He further stated that defendant continued to insult him and his wife, and that he feared defendant because "he was a mess," "crazy," and "if it wasn't drugs, it was something else."

{¶11} With regard to the charge at issue, Terence testified that he and his family returned home as defendant was preparing to leave and defendant said, "You gotta call the police. Anything you gotta say to my face?" He then threatened the Delaines, and Terence called defendant a bum and a loser, and they traded insults for ten to fifteen minutes. LaToyia went inside with their daughter and called the police. Kevin, "who had a long-running incident" with defendant, stopped what he was doing in his yard and observed what was happening, but did not approach. Kevin later spoke with the police. Terence stated that he was physically afraid because defendant does not "fear the law," so he obtained a criminal protection order.

{¶12} Kevin testified that shortly after meeting defendant, defendant had bragged about beating up a former neighbor in Lakewood, so he instructed his family to avoid defendant. Later, according to Kevin, defendant cut down bushes in Kevin's yard and attacked Kevin's son and wife when they attempted to stop him. Kevin also learned from his son that defendant had gotten into an altercation with two men. Defendant made obscene gestures to Kevin and his family, and Kevin was afraid of how he or his children would react. Based upon defendant's actions and the information he learned

from Terence about the 2004 Lakewood matter, Kevin believed that defendant was capable of violence.

**{¶13}** As to the events of May 17, 2009, Kevin testified that he heard defendant screaming at the Delaines and threatening them. Defendant began to approach Kevin but was stopped by Kevin's wife who got between them. As a result of this incident, Kevin filed charges and obtained a criminal protection order for his family.

**{¶14}** After that incident, on August 22, 2010, the police arrived at Kevin's house in response to a call that a car was blocking the sidewalk. After about 20 minutes the car was moved. Later that night, at around 11:00 p.m., Kevin heard knocking on his living room window. He went outside and saw the defendant on his property, and the defendant yelled an insult at him. Kevin then reported that the defendant had violated the criminal protection order.

**{¶15}** Officer Johnson testified that he spoke with the defendant in response to Kevin's August 22, 2010 complaint. According to Officer Johnson, the defendant smelled of alcohol, his eyes were bloodshot, and his speech was slurred. Defendant indicated that he had consumed two beers. He repeatedly refused the officer's requests to take his hands out of his pockets, so Officer Johnson grabbed his wrists and handcuffed him. Defendant was arrested and a box cutter was recovered from one of the pockets. Johnson also testified that he administered a breath alcohol test to the defendant that indicated a breath alcohol level of .080, which is intoxicated for purposes of operating a motor vehicle.

{¶16} Defendant elected to present evidence. His wife, Kathryn Burrows Smith ("Smith"), testified that she travels in connection with her job and defendant stays home and takes care of their children, an eight-year-old and a four-year-old who has autism. She further testified that defendant has bipolar disorder and depression, and he was convicted of a misdemeanor assault charge in Lakewood. She acknowledged that her family has called the police to report loud music and barking dogs, and the Michaels family and the Delaines frequently called the police to complain that her husband shoveled snow onto the street or left yard clippings on their driveway.

{¶17} With regard to the November 2008 incident, Smith testified that Terence pounded on their door and confronted defendant about leaving grass clippings on his driveway. Defendant explained that it had started raining before he could finish the job and that Terence had his broom. At that point, Terence called defendant a loser and a freeloader. She tried to separate the two men as the argument escalated, and then Terence pushed her to the ground and punched defendant in the eye, knocking him down.

{¶18} The jury was subsequently instructed on the lesser included offense of disorderly conduct. Following their deliberations, defendant was convicted of three counts of disorderly conduct and violating the criminal protection order.

{¶19} On the charge involving Kevin, the trial court fined defendant $250; sentenced defendant to 30 days of incarceration, which was suspended provided that he had no further contact with the complainants and does not engage in similar behavior; and imposed three years of probation involving substance abuse and psychiatric assessments.

For the charges involving LaToyia and Terence, the court fined defendant $250 and suspended $150 of the fine, sentenced him to 30 days of incarceration with 30 days suspended, and imposed "no contact" orders. For the offense of violating the criminal protection order, the trial court imposed a fine of $1,000, 180 days of incarceration with 150 days suspended, and all but six of the remaining days "held in abeyance," and probation for two years with psychiatric and alcohol assessments.

{¶20} Defendant now appeals, assigning five errors for our review. Defendant's first and third assignments of error are interrelated and will be addressed together.

{¶21} Defendant's first and third assignments of error state:

The trial court abused its discretion in permitting irrelevant and prejudicial prior acts evidence and inferences.

Through cumulative effect, defendant-appellant was denied a fair trial.

{¶22} In his first and third assignments of error, defendant complains that the trial court erred in permitting the state to introduce the impermissible "other-acts evidence," and in permitting the prosecuting attorney's "personal vouching" for the truth of disputed facts, and that the combined effect of these errors deprived defendant of a fair trial.

{¶23} We review a trial court's decision regarding the admission of such evidence under an abuse of discretion standard. *State v. Sage*, 31 Ohio St.3d 173, 510 N.E.2d 343 (1987), paragraph two of the syllabus.

{¶24} Pursuant to Evid.R. 404(B):

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive,

opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

*See also* R.C. 2945.59.

**{¶25}** The admissibility of other-acts evidence is carefully limited because of the substantial danger that the jury will convict the defendant solely because it assumes that the defendant has a propensity to commit criminal acts, or deserves punishment regardless of whether he or she committed the crime charged in the indictment. *See State v. Curry*, 43 Ohio St.2d 66, 330 N.E.2d 720 (1975), ¶ 1. Further, because the statute and the rule codify an exception to the common law with respect to other acts of wrongdoing, they are to be construed against admissibility. *State v. Murray,* 8th Dist. No. 91268, 2009-Ohio-2580.

**{¶26}** As explained in *State v. Williams*, 195 Ohio App.3d 807, 2011-Ohio-5650, 961 N.E.2d 1200, ¶ 37-38 (8th Dist.) (en banc),

> courts have long recognized the danger of admitting other-acts evidence. In *United States v. Phillips* (1979), 599 F.2d 134, 136, the Sixth Circuit Court of Appeals stated as follows: "Two concerns are expressed by the first sentence of [Fed.R.Evid.] 404(b): (1) that the jury may convict a 'bad man' who deserves to be punished — not because he is guilty of the crime charged but because of his prior or subsequent misdeeds; and (2) that the jury will infer that because the accused committed other crimes, he probably committed the crime charged." As cautioned by the Ohio Supreme Court in *State v. Lowe* (1994), 69 Ohio St.3d 527, 634 N.E.2d 616, "we therefore must be careful * * * to recognize the distinction between evidence which shows that a defendant is the *type* of person who might commit a particular crime and evidence which shows that a defendant *is* the person who committed a particular crime." (Emphasis sic.) *Id.* at 530. This danger is particularly high when the other acts are very similar to the charged offense, or of an inflammatory nature, as in the case at bar.

**{¶27}** In addition, other-acts evidence is subject to the limitations provided in Evid.R. 402 and 403; therefore, the proffered evidence must be relevant and its probative value must outweigh its potential for unfair prejudice. *Murray.*

**{¶28}** With regard to a claim of cumulative error, we note that in *Westlake v. Filiaggi*, 8th Dist. No. 93599, 2010-Ohio-4481, this court held that "'a conviction will be reversed where the cumulative effect of errors in a trial deprives a defendant of the constitutional right to a fair trial even though each of numerous instances of trial court error does not individually constitute cause for reversal.'" *Id*., quoting *State v. Garner*, 74 Ohio St.3d 49, 64, 1995-Ohio-168, 656 N.E.2d 623, and *State v. DeMarco*, 31 Ohio St.3d 191, 509 N.E.2d 1256 (1987), paragraph two of the syllabus. In that case, the prosecutor introduced irrelevant and prejudicial evidence that the defendant was fired from her nursing job as a result of assault on a patient, mischaracterized the evidence of the assault by repeatedly stating that the defendant aggressively charged at the patient, and argued that the jury should find that defendant guilty because the prosecutor had never previously believed a complaint of a nurse assaulting a patient. This court concluded that taken together, the challenged evidence deprived the defendant of her right to a fair trial.

**{¶29}** In this matter, the record contains copious amounts of other-acts testimony, including testimony concerning other acts that was supported only by conjecture and speculation. The Delaines and Kevin were permitted to testify that defendant repeatedly bragged "about how he beat up an elderly male in Lakewood." LaToyia was permitted

to testify that she lived in "fear that he would possibly take" her daughter, that she believed that defendant has the "tendency" to be a child molester, that defendant called her "the C word." She also stated that defendant could not "hold down a job" and that she suspected him of putting dead animals in their yard and activating the car fob device. She was permitted to testify that she did not "know if this man has a gun or what," and that defendant got into an altercation with another neighbor and spat on him.

{¶30} Terence testified that after his daughter spent time at defendant's home, she returned "screaming, crying," and he believed that something was not right because defendant always wanted girls at his house and "[n]ever ever boys." He also testified that he observed defendant arguing with a man who "looked like somebody must have gave somebody some bad drugs," and defendant spat on the man and shoved him. Terence was permitted to testify that he has seen defendant drink a six-pack within an hour and that "all he does is drink." He stated that defendant "was a mess," "crazy," and "if it wasn't drugs, it was something else," and does not "fear the law." Terence also speculated that defendant has his fob device, and he has placed dead animals on his property.

{¶31} Terence testified that he paid $20 for a "stack" of defendant's records from Lakewood and that he picked up "quite a few police reports." Terence told the jury that the South Euclid matter "wasn't the first time it happened," "its been going on forever," and that defendant "can't deal with confrontation."

**{¶32}** In short, the record displays an overwhelming amount of other-acts evidence. We find that this evidence was used to simply establish that defendant has a bad character and acted in conformity therewith, and comes squarely within the prohibition of Evid.R. 404(B) because it portrayed defendant as a "'bad man' who deserves to be punished." The vast amount of other-acts evidence presented to the jury likely suggested to the jury that "because the accused committed other crimes, he probably committed the crime charged." Moreover, this evidence was highly inflammatory and personally damaging; yet, it was of little probative value because of the speculative nature of the testimony.

**{¶33}** The city insisted that the Delaines and Kevin could properly testify that defendant "got away with it before," in order to establish their reasonable fear that he would cause them physical harm. Such evidence may be relevant where it involves that victim. *State v. Horsley*, 10th Dist. No. 05AP-350, 2006-Ohio-1208; *State v. Bilder*, 99 Ohio App.3d 653, 658, 651 N.E.2d 502 (9th Dist.1994); *State v. Tichon*, 102 Ohio App.3d 758, 658 N.E.2d 16 (9th Dist. 1995).[3] Here, however, the evidence does not involve the same individuals, and the evidence reaches the essence of the Evid.R. 404(B) prohibition because it relies on the very inferential pattern that "he did it before, so he

[3]Similarly, the cases cited by the city in opposition to the motion in limine are also inapplicable as the other-acts testimony in *State v. Canitia*, 8th Dist. Nos. 62492 and 62639, 1993 WL 215389 (June 17, 1993), and *State v. Warren*, 5th Dist. No. CA-8258, 1990 WL 237478 (Dec. 31, 1990), concerned events involving the same victim.

must have done it again." *See State v. Nucklos*, 171 Ohio App.3d 38, 2007-Ohio-1025, 869 N.E.2d 674, ¶ 87-88 (2d Dist.).

**{¶34}** In addition, the record indicates that the prosecuting attorney stated in opening statements that the officers had to decide whether to place defendant in the "drunk tank" after his arrest, and continually elicited questions regarding mental health and the fact that defendant was unemployed. He reiterated these matters in his closing argument, stating that defendant is a "mentally ill menace with a violent past," again raising the very inferential pattern that Evid.R. 404(B) was designed to prohibit. In addition, the prosecuting attorney appealed to the jury to fulfill a civic duty when he asked that they "send a message" by its verdict. He also expressed personal belief in his witnesses, as he stated that "we all know" defendant went into Kevin's yard.

**{¶35}** In light of all of the foregoing, we conclude that the combined effect of all of this challenged evidence and argument deprived defendant of a fair trial in this matter. Although the challenged other-acts evidence and the prosecutor's personal vouching for the truth of disputed facts may not individually constitute cause for reversal, they accumulated to such a degree that they combined to prejudice defendant's right to a fair trial. This assignment of error is well taken.

**{¶36}** Defendant's remaining assignments of error state:

> The trial court abused its discretion in permitting irrelevant and prejudicial prior acts evidence and inferences.

> Defendant-Appellant was denied a fair trial through prosecutorial misconduct.

Defendant-Appellant was denied effective assistance of counsel.

The guilty verdicts are against the manifest weight of the evidence.

**{¶37}** In light of our disposition of the first and third assignments of error, these claims are moot and will not be addressed herein.   App.R. 12(A)(1).

**{¶38}** Judgment reversed and remanded.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the Lyndhurst Municipal   Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY EILEEN KILBANE, JUDGE

MARY J. BOYLE, P.J., CONCURS;
SEAN C. GALLAGHER, J., CONCURS (SEE SEPARATE CONCURRING OPINION)

SEAN C. GALLAGHER, J., CONCURRING:

**{¶39}** Even in consideration of the Ohio Supreme Court's recent decision in *State v. Morris*, Slip Op. No. 2012-Ohio-2407, to limit appellate review of the admission of

other-acts evidence to an abuse of discretion standard, I concur in judgment with the majority that the convictions should be reversed. While there is evidence in the record of this case to support a conviction for disorderly conduct and the violation of a criminal protection order, I agree that the admission of certain other-acts evidence and other errors so tainted the proceedings that reversal is warranted.

{¶40} Undoubtedly, a trial involving a dispute between neighbors will contain a certain level of "he said, she said" commentary regarding the character of the parties. Trial judges, prosecutors, and defense counsel cannot micro-manage every aspect of a witness's testimony. Certain comments about a witness's view of an antagonist are going to come out, even if the Rules of Evidence are designed to preclude such commentary.

{¶41} I concur with the majority that the admission of certain evidence crossed the line, but I disagree with the majority's view on what constitutes other-acts 404(B) evidence in this case. In my view, the testimony regarding the "other acts" from Lakewood is what crossed the line. The fact that the victim was purportedly in "fear that he would possibly take her daughter" or that he called her the "the C-word" are not "other acts" and merely express the victim's state of mind regarding her view of the defendant. Likewise, references to the belief that the defendant was responsible for placing dead animals in the yard or to the use of a missing fob device for a car go to the state of mind of the victim and not necessarily to other acts of the defendant. While it

might be prudent for a trial court to limit some of this ancillary testimony, I do not see it as "other-acts" testimony.

{¶42} In addition, comments by the prosecutor that the police had to consider whether to place the defendant in the "drunk tank" relate to the facts of the case, not to other-acts evidence. The comments regarding the mental health of the defendant, absent direct relevant evidence on that point, however, were improper.

{¶43} I am cognizant that the defendant testified and arguably established many of the elements of both disorderly conduct and violation of a criminal protection order by his own testimony, but I believe this trial was tainted beyond salvation by admission of the other acts about prior misconduct contained in the Lakewood police reports.