The STATE of Ohio, Appellee,

v.

SIMS, Appellant.

[Cite as *State v. Sims*, 191 Ohio App.3d 622, 2010-Ohio-6228.]

Court of Appeals of Ohio,
Second District, Greene County.

No. 09CA0073.

Decided Dec. 17, 2010.

Stephen K. Haller, Greene County Prosecuting Attorney, and Stephanie R. Hayden, Assistant Prosecuting Attorney, for appellee.

George A. Katchmer and L. Patrick Mulligan, for appellant.

GRADY, Judge.

{¶ 1} Defendant, Brandon Sims, appeals from his conviction and sentence for attempted felonious assault.

{¶ 2} Defendant and the victim, Jessica Sims, were married in November 2008, but separated in January 2009. On May 1, 2009, Jessica Sims and her young daughter moved into an apartment at 57 West Second Street in Xenia. Shortly before June 22, 2009, Jessica Sims invited defendant to stay with her at her apartment.

{¶ 3} On the evening of June 22, 2009, defendant and Jessica Sims argued after defendant learned that she was having an affair. Their verbal bickering escalated into physical violence, and each caused physical harm to the other.

{¶ 4} At some point during their argument, Jessica Sims struck defendant in the mouth and eye and bit his finger. After defendant approached Sims following a smart remark Sims made, Jessica Sims held up a fork at defendant and told him to get out of her face. Defendant's response was to grab Sims by the throat and choke her. Sims struggled because she was unable to breathe, and she eventually passed out. That happened three separate times. During this time, Jessica Sims attempted to get out her front door but was prevented from doing so by defendant.

{¶ 5} When Jessica Sims's neighbor, Naomi Waters, arrived home, she observed Sims coming out her back door into the back yard. Sims was shirtless and stumbling, coughing, gagging, and crying. Defendant was following her. Waters heard defendant say, "I'm not f—ing done with you yet," as Sims was crawling across the ground. Defendant then picked Jessica Sims up as she was vomiting, and he hit her. When Waters asked what was going on, defendant stated that Sims had been drinking. Jessica Sims immediately replied, "I don't drink. Help me." At that point, Waters called 9–1–1 and defendant was arrested by police. Jessica Sims was treated at Greene Memorial Hospital.

{¶ 6} Defendant was indicted on one count of attempted felonious assault, R.C. 2923.02(A) and 2903.11(A)(1), a felony of the third degree, and one count of kidnapping, R.C. 2905.01(B)(2), a felony of the first degree. Following a jury trial, defendant was found guilty of attempted felonious assault but not guilty of kidnapping. The trial court sentenced defendant to a five-year prison term.

{¶ 7} Defendant timely appealed to this court from his conviction and sentence.

FIRST ASSIGNMENT OF ERROR

{¶ 8} "The court erred by admitting other bad acts evidence."

{¶ 9} Over defendant's objection, the trial court permitted the state to present evidence at trial of four prior instances of domestic violence perpetrated by defendant against this same victim. Those prior instances of domestic violence included defendant hitting the victim in the face and mouth and pulling chunks of hair from her head. Defendant argues that the trial court abused its discretion in admitting this evidence of "other bad acts" because it violated Evid.R. 404(B).

{¶ 10} Evid.R. 401 through 403 define relevance and provide for the function of relevance as the threshold standard for admissibility. Evid.R. 404(A) provides that though it may be relevant, "[e]vidence of a person's character or a trait of

character is not admissible for the purpose of proving action in conformity therewith on a particular occasion." "The term 'character' refers to a generalized description of a person's disposition or a general trait such as honesty, temperance, or peacefulness. Generally speaking, character refers to an aspect of an individual's personality which is usually described in evidentiary law as a 'propensity.'" Weissenberger's Ohio Evidence Treatise (2009 Ed.), Section 404.3.

{¶ 11} Evid.R. 404(B) states:

{¶ 12} "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

{¶ 13} Evid.R. 404(B) codifies the exclusionary principle in Evid.R. 404(A) with respect to certain kinds of extrinsic evidence, that is, evidence of matters that are not a part of the operative facts of the episode the case concerns and that involve a person's "other crimes, wrongs, or acts." Evid.R. 404(B) further prohibits a particular inferential pattern, by which the extrinsic act inferentially indicates a character trait or general propensity, which in turn inferentially indicates commission of an act that is part of the operative facts of the case.

{¶ 14} The second sentence in Evid.R. 404(B) indicates that evidence of other crimes, wrongs, or acts may nevertheless be admissible to prove consequential facts other than conforming conduct when the consequential fact is relevant to prove a matter in issue. Such consequential facts include, but are not limited to, the person's motive, opportunity, intent, preparation, plan, or knowledge in acting as he did on a later occasion, or facts that identify the actor or the lack of mistake or accident. In determining admissibility for those purposes, "the fundamental issue is whether the act is offered only to prove character or conforming conduct. If so, the evidence is rendered inadmissible by the first sentence of Rule 404(B)." Weissenberger, Section 404.23. The burden is on the proponent of extrinsic-act evidence to demonstrate that the relevance of the extrinsic act does not pertain to character and conforming conduct. *State v. Skatzes*, 104 Ohio St.3d 195, 2004-Ohio-6391, 819 N.E.2d 215.

{¶ 15} It is fundamental to any of the matters in Evid.R. 404(B) that in order for other-act evidence to be admissible to prove it, the matter must be relevant to a matter at issue in the litigation. *State v. Smith* (1992), 84 Ohio App.3d 647, 617 N.E.2d 1160. To satisfy that requirement, the other-act evidence must tend to show by substantial proof one or more of the things the rule or statute enumerates. *State v. Broom* (1988), 40 Ohio St.3d 277, 533 N.E.2d 682. Such evidence is never admissible when its sole purpose is to establish that the defendant committed the act alleged in the indictment. *State v. Flonnory* (1972),

31 Ohio St.2d 124, 60 O.O.2d 95, 285 N.E.2d 726. Rather, the evidence must tend to prove one or more of the matters in Evid.R. 404(B), which in turn is itself relevant to prove the criminal offenses alleged. *State v. Crotts*, 104 Ohio St.3d 432, 2004-Ohio-6550, 820 N.E.2d 302. Because the rule codifies an exception to the common law, it must be strictly construed against admissibility of other-act evidence. *State v. Burson* (1974), 38 Ohio St.2d 157, 67 O.O.2d 174, 311 N.E.2d 526.

{¶ 16} The trial court permitted Jessica Sims to testify about four prior instances of domestic violence during which defendant struck her in the face and pulled chunks of her hair from her head. The trial court admitted this evidence to show Jessica Sims's state of mind. During closing argument, the prosecutor referred to Sims's testimony about the prior domestic-violence incidents and indicated that that evidence had been introduced only to show Jessica Sims's state of mind. During its instructions, the trial court cautioned the jury to limit its consideration of the domestic-violence evidence to Jessica Sims's state of mind.

{¶ 17} In admitting evidence of defendant's prior acts of domestic violence against Jessica Sims, the trial court, at the urging of the state, relied upon *State v. Kelly* (1993), 89 Ohio App.3d 320, 624 N.E.2d 733. In *Kelly*, the defendant was charged with kidnapping, abduction, and rape. The trial court in *Kelly* had allowed the victim to testify about prior instances of domestic violence. The court of appeals concluded that the testimony concerning prior domestic-violence incidents did not fall within any of the matters enumerated in Evid.R. 404(B) and did not constitute evidence of scheme, plan, or system, because the prior domestic-violence incidents were not inextricably related to the crimes charged and did not form part of the immediate background or the basis for the crimes charged. *State v. Curry* (1975), 43 Ohio St.2d 66, 73, 330 N.E.2d 720. Nevertheless, the court of appeals concluded that the prior incidents of domestic violence were admissible to show the victim's state of mind. The court of appeals stated:

{¶ 18} "[T]he incidents of prior domestic violence were relevant to Teresa's state of mind and why she did not try to escape from appellant or summon the police. This bears directly upon the elements of 'privilege' and 'force' inherent to the charges of kidnapping and abduction in this case." *Kelly*, 89 Ohio App.3d at 324, 624 N.E.2d 733.

{¶ 19} The rationale in *Kelly* does not involve application of Evid.R. 404(B), but instead involves the use of evidence of a defendant's other crimes as circumstantial evidence to show the victim's state of mind, offered to prove that the accused engaged in conduct prohibited by law. Circumstantial evidence is proof of certain facts and circumstances from which a jury may infer other connected facts that usually and reasonably follow according to common experience. However, an inference cannot be deduced from or predicated on another

inference. *Hurt v. Charles J. Rogers Transport Co.* (1955), 164 Ohio St. 329, 58 O.O. 122, 130 N.E.2d 820. Each inference must arise from and be proved by direct evidence. *Hoppe v. Indus. Comm.* (1940), 137 Ohio St. 367, 19 O.O. 88, 30 N.E.2d 703.

{¶ 20} In *Kelly*, the jury was permitted to infer that the defendant used force and acted without privilege from the fact that the victim was in fear of the defendant, and was permitted to infer her state of mind in that respect from the fact that the defendant had previously engaged in domestic violence against her. That is the "inference on an inference" that is not permitted. We believe that the holding in *Kelly* is problematic for that reason.

{¶ 21} Defendant was charged with attempted felonious assault, R.C. 2923.02(A) and 2903.11(A)(1). In order to prove that offense, the state was required to prove that defendant knowingly engaged in conduct that, if successful, would result in defendant's causing serious physical harm to another. Defendant was also charged with kidnapping, R.C. 2905.01(B)(2). In order to prove that offense, the state was required to prove that defendant, by force, knowingly restrained another of the other person's liberty, under circumstances that created a substantial risk of serious physical harm to the victim.

{¶ 22} Evidence of the prior domestic-violence incidents was not admissible under Evid.R. 404(B) as evidence of defendant's scheme, plan, or system, because the prior domestic-violence incidents are not inextricably related to the crimes charged in this case and do not form part of the immediate background or the basis for the crimes charged here. *Curry*. Neither were any of the other matters mentioned in Evid.R. 404(B) in issue. Furthermore, in our opinion, the prior domestic-violence incidents were not admissible in this case to show the victim's state of mind and why she did not try to escape from defendant. Jessica Sims's own testimony clearly demonstrates that she physically struggled with defendant while he was choking her and that she did try to escape from defendant but he prevented her from doing so. Other-act evidence offered to show why Sims did not try to escape from defendant is contrary to Sims's own testimony as well as the other evidence the state offered.

{¶ 23} Relying on Evid.R. 404(B), the state argued to the trial court that evidence concerning defendant's prior domestic-violence incidents was also admissible to show intent, knowledge, and the absence of mistake or accident. In other words, that defendant's prior episodes of domestic violence wherein he assaulted Jessica Sims shows that his commission of the conduct alleged in the indictment was not a mistake or accident and that he intended to cause physical harm to Jessica Sims.

{¶ 24} The state's argument relies on the very inferential pattern that Evid.R. 404(B) prohibits: proof of an extrinsic act that inferentially indicates a propensity

that, in turn, inferentially indicates commission of an act that is part of the operative facts of the offenses alleged. Weissenberger, Section 404.21. Stated more simply, because he did it once, it is reasonable to find that he did it again. We necessarily reject the state's arguments.

{¶ 25} In any event, defendant did not claim that his conduct in restraining Sims and choking her was accidental. Accident was not an issue in this case. Furthermore, evidence that defendant had previously engaged in acts of domestic violence against this same victim does not demonstrate that when he engaged in the conduct the charges in this indictment involve, he acted with a specific intent or in the knowledge that his conduct was wrongful. It merely proves prior, conforming conduct, and in that regard is inadmissible. *State v. Nucklos,* 171 Ohio App.3d 38, 2007-Ohio-1025, 869 N.E.2d 674. The trial court abused its discretion when it admitted evidence of defendant's extrinsic acts involving prior domestic-violence incidents.

{¶ 26} Defendant's first assignment of error is sustained. Defendant's convictions is reversed, and this cause is remanded for further proceedings consistent with this opinion.

SECOND ASSIGNMENT OF ERROR

{¶ 27} "The court erred in giving confusing jury instructions and in not sua sponte declaring a mistrial due to confusing jury instructions involving the definition of felonious assault."

THIRD ASSIGNMENT OF ERROR

{¶ 28} "Inconsistent verdicts are plain error and require reversal and the court's failure to order a mistrial was an abuse of discretion."

FOURTH ASSIGNMENT OF ERROR

{¶ 29} "The appellant was denied a fair trial due to the ineffectiveness of counsel."

FIFTH ASSIGNMENT OF ERROR

{¶ 30} "Cumulative errors deprived the appellant of a fair trial."

{¶ 31} Our disposition of defendant's first assignment of error renders these remaining assignments of error moot. Accordingly, we will not address them. App.R. 12(A)(1)(c).

Judgment reversed
and cause remanded.

BROGAN and CANNON, JJ., concur.

TIMOTHY P. CANNON, J., of the Eleventh District Court of Appeals, sitting by assignment.