[Cite as *Dayton v. Ahmad*, 2011-Ohio-2302.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

CITY OF DAYTON                          :

    Plaintiff-Appellee                :          C.A. CASE NO.    24165

v.                                      :          T.C. NO.    04TRD8431

MUHAMMAD AHMAD                          :          (Criminal appeal from
                                                   Municipal Court)
    Defendant-Appellant           :

                                        :

. . . . . . . . . .

# O P I N I O N

Rendered on the ___13ᵗʰ___ day of ___May___, 2011.

. . . . . . . . . .

EDWARD C. UTACHT II, Atty. Reg. No. 0022225, Dayton City Prosecutor's Office, 335 W. Third Street, Room 372, Dayton, Ohio 45402
    Attorney for Plaintiff-Appellee

ANDREA G. OSTROWSKI, Atty. Reg. No. 0075318, 25 E. Central Avenue, Suite 4, Springboro, Ohio 45066
    Attorney for Defendant-Appellant

. . . . . . . . . .

DONOVAN, J.

{¶ 1} This matter is before the Court on the Notice of Appeal of Muhammad Ahmad, filed July 20, 2010. On May 31, 2004, Ahmad was cited by City of Dayton Police Officer Michael Wolpert for multiple traffic violations, namely three violations of R.C. 4510.16,

driving under financial responsibility law suspension, misdemeanors of the first degree; six violations of R.C. 4510.11, driving under suspension, misdemeanors of the first degree; operating a motor vehicle while not wearing a seatbelt, in violation of R.C. 4513.263(B)(1), a minor misdemeanor; operating a motor vehicle bearing an invalid license plate, in violation of R.C. 4549.08, a misdemeanor of the fourth degree; and operating a motor vehicle without a valid license, in violation of R.C. 4510.12, a misdemeanor of the first degree.

{¶ 2} On April 27, 2010, Ahmad filed a Motion to Dismiss on speedy trial grounds, which the municipal court denied after a hearing. Following a bench trial to an acting judge, at which Officer Wolpert and Ahmad testified, the municipal court found Ahmad not guilty of operating a motor vehicle without a valid license and the seatbelt violation, and guilty of three violations of R.C. 4510.16 and guilty of six violations of R.C. 4510.11. The municipal court sentenced Ahmad to 30 days for operating a motor vehicle bearing an invalid license plate, with 30 days suspended. The court merged the suspension offenses, and the sentencing entry provides that Ahmad received 180 days in jail, with 170 days suspended, for two counts of driving under suspension. The sentences were ordered to be served concurrently.

{¶ 3} At trial, Wolpert testified that he and his partner, while on patrol in the area of Salem Avenue, performed a "random plate check on a vehicle; the plate came back to an eighty-eight Buick; the plates were on a Cadillac." Wolpert then initiated a traffic stop by turning on his overhead lights. Ahmad was the sole occupant of the vehicle. When Ahmad did not produce identification, Wolpert obtained his social security number. After

performing a computer check, Wolpert learned that Ahmad did not have a valid license.

{¶ 4} On cross-examination, the following exchange occurred:

{¶ 5} "Q. * * * With regard to the license plate, it was eleven o'clock at night that you ran the plate check?

{¶ 6} "A.  Yes.

{¶ 7} "Q. * * * How were you able to see the license plate?

{¶ 8} "A.  We were behind him.

{¶ 9} "Q.  And when you looked at the license plate, was there any notification on the plate itself that said it didn't belong on the car that it was currently attached to?

{¶ 10} "* * *

{¶ 11} "Q.  Was there any notice to anybody else that when they walked up to the car that that license plate didn't belong to that vehicle?

{¶ 12} "A.  You mean the average person that doesn't have a LEADS system?

{¶ 13} "Q.  Correct.

{¶ 14} "A.  I wouldn't think so, no.

{¶ 15} "Q.  And so you only found out that that plate belonged to a Cadillac by using that computer system, correct?

{¶ 16} "A.  Correct.

{¶ 17} "Q.  And who was the registered owner of the eighty-eight Buick that Mr. Ahmad was driving?

{¶ 18} "A.  I couldn't tell you.

{¶ 19} "* * *

{¶ 20} "Q. With regard to the safety belt violation when you walked up to the car window did Mr. Ahmad have a safety belt on?

{¶ 21} "A. Must not have otherwise I wouldn't have issued him a citation for it.

{¶ 22} "* * *

{¶ 23} "Q. So the answer to my question whether you specifically recall [Ahmad] wearing a safety belt your answer is you don't know.

{¶ 24} "A. No my answer is if he didn't have it on then he didn't have it on.

{¶ 25} "Q. I'm going to ask you a yes or no question sir, do you specifically remember Mr. Ahmad wearing a safety belt that night?

{¶ 26} "A. No.

{¶ 27} "* * *

{¶ 28} "Q. And how far down the road did you follow the car before Mr. Ahmad was able to pull over successfully?

{¶ 29} "A. About three blocks.

{¶ 30} "Q. Do you know * * * where on Salem Mr. Ahmad pulled over?

{¶ 31} "A. Malvern."

{¶ 32} " * * *

{¶ 33} "Q. With regard to since two thousand and four how many traffic citations have you issued?

{¶ 34} "A. Thousands.

{¶ 35} "Q. And you're certain that Mr. Ahmad was driving the vehicle, correct?

{¶ 36} "A. Picked him out last time we were here.

{¶ 37} "* * *

{¶ 38} "Q.  So your whole citation is based upon the LEADS screen that you saw that night on May thirty-first two thousand four, correct?

{¶ 39} "A.  If you want to say the stop where it said plates to another, or came back to a Buick then yes it was a random plate check; plates came back to another vehicle, made a stop."

{¶ 40} Ahmad testified as follows: "For one I never had a Cadillac; it's not my car. I've not owned a Cadillac, I've never registered a Cadillac.  I was at my business on Malvern when the officer pulled behind me.  There was somebody with me; the car was shut off; the doors were open. * * * * He never drove up behind me with lights blaring.  He was at my business.  That's where the stop happened, parked."  Ahmad testified that he "worked at a detail shop," and that the Cadillac belonged to a customer of his.  The Cadillac's owner "wanted me to fix something in his radio so as far as the owner I have no information about him except his name."  According to Ahmand, he never drove the Cadillac.   Ahmad stated that he was in the driver's seat when Wolpert approached, and that his nephew was present with him.  On cross-examination,  Ahmad testified that he  "was on my property with the key in the ignition," and he admitted that he did not have a valid driver's license.

{¶ 41} A certified copy of Ahmad's Ohio Bureau of Motor Vehicles record was admitted into evidence, and it reveals that his driver's license was subject to multiple suspensions.

{¶ 42} Ahmad asserts two assignments of error.  His first assigned error is as

follows:

{¶ 43} "'DEFENDANT-APPELLANT'S CONVICTION FOR FICTITIOUS LICENSE PLATES IS AGAINST THE SUFFICIENCY OF THE EVIDENCE."

{¶ 44} Ahmad asserts that the State did not "prove all the elements of this offense," in that R.C. 4549.08 is not a strict liability offense, and the State was accordingly required to prove that Ahmad was reckless to establish a violation of R.C. 4549.08. The State agrees "that the requisite mens rea for this offense is recklessness," and that at trial, the "State offered no evidence of the Appellant's mental state."

{¶ 45} "In reviewing a claim of insufficient evidence, '[t]he relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus, following *Jackson v. Virginia* (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560; see, also, *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386, * * * ." *State v. McKnight*, 107 Ohio St.3d 101, 112, 2005-Ohio-6046, ¶ 70.

{¶ 46} R.C. 4549.08 provides, "(A) No person shall operate or drive a motor vehicle upon the public roads and highways in this state if it displays a license plate or a distinctive number or identification mark that meets any of the following criteria:

{¶ 47} * * "(3) Belongs to another vehicle, * * * ."

{¶ 48} R.C. 2901.21(B) provides, "When the section defining an offense does not specify any degree of culpability, and plainly indicates a purpose to impose strict liability for the conduct described in the section, then culpability is not required for a person to be guilty

of the offense. When the section neither specifies culpability nor plainly indicates a purpose to impose strict liability, recklessness is sufficient culpability to commit the offense." We have previously determined that a violation of R.C. 4549.08 is not a strict liability offense. *State v. Howard*, Montgomery App. No. 21899, 2007-Ohio-6591, ¶ 19.

{¶ 49} Officer Wolpert testified that he cited Ahmad for the violation at issue after he learned, from a random LEADS search, that the license plate on the car Ahmad was operating belonged to another vehicle. There was no evidence presented regarding Ahmad's mens rea, since the State concedes error. Ahmad's conviction for violating R.C. 4549.08 is against the sufficiency of the evidence. Ahmad's first assigned error is sustained.

{¶ 50} Ahmad's second assigned error is as follows:

{¶ 51} ""MR. AHMAD'S CONVICTIONS FOR DRIVING UNDER FINANCIAL RESPONSIBILITY LAW SUSPENSION AND DRIVING UNDER SUSPENSION ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶ 52} According to Ahmad, since he was not operating the vehicle when he was approached by Wolpert, his convictions for driving under the multiple suspensions are against the manifest weight of the evidence. Ahmad further asserts that Wolpert's testimony contained inconsistencies and was not credible. For example, Ahmad asserts that Wolpert testified on direct that the plates belonged to a Buick but were on a Cadillac, and then stated on cross-examination that the plates belonged to a Cadillac and that Ahmad was in a Buick.

{¶ 53} "When an appellate court analyzes a conviction under the manifest weight of the evidence standard it must review the entire record, weigh all of the evidence and all the

reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the fact finder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. (Internal citations omitted). Only in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Dossett*, Montgomery App. No. 20997, 2006-Ohio-3367, ¶ 32.

{¶ 54} The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of facts to resolve. *State v. DeHass* (1997), 10 Ohio St.2d 230, 231, * * * . "Because the factfinder * * * has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." *State v. Lawson* (Aug. 22, 1997), Montgomery App. No. 16288.

{¶ 55} This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of fact lost its way in arriving at its verdict. *State v. Bradley* (Oct. 24, 1997), Champaign App. No. 97-CA-03.

{¶ 56} R.C. 4510.16(A) and R.C. 4510.11 provide that "no person * * * shall operate" a motor vehicle in violation of a financial responsibility law suspension or while under suspension. Ahmad directs our attention to R.C. 4511.01(HHH), which provides, "'Operate' means to cause or have caused movement of a vehicle, street car or trackless

trolley."

{¶ 57} In *State v. Cochran*, Montgomery App. No. 22240, 2008-Ohio-3612, ¶ 23, we noted, "In a long line of cases involving OMVI violations, the courts have held that the term 'operate' is broader than merely driving or causing movement of a motor vehicle, and is satisfied by evidence that an accused was found in the driver's seat of a motor vehicle, with the ignition key in the ignition, whether or not the engine of the vehicle was running. *State v. Gill*, 70 Ohio St.3d 150, * * * 1994-Ohio-403; *State v. Cleary* (1986), 22 Ohio St. 3d 198, * * * ; *State v. McGlone* (1991), 59 Ohio St.3d 122, * * * ."

{¶ 58} R.C. 4511.01(HHH) became effective on January 1, 2004. In *Cochran*, we determined that while "R.C. 4501.01(HHH) supersedes the prior judicial definition of 'operate' in *State v. Gill* and cases that have relied on its holding," a "different quantum of proof" is not required where "the accused is found in the driver's seat of a vehicle with the key in the ignition. Those facts are circumstantial evidence that the accused operated the vehicle to bring it to the place where it was found, and circumstantial and direct evidence inherently possess the same probative value." *Cocran*, ¶ 25.

{¶ 59} We further noted that the "definition of 'operate' in R.C. 4511.01(HHH) is part of an extensive definitional section, R.C. 4511.01, which contains the following preamble: 'As used in this chapter and in Chapter 4513 of the Revised Code.' By those terms, the definition of 'operate' in R.C. 4511.01(HHH) does not apply to or limit the violation of R.C. 4510.16(A)" or R.C. 4510.11. *Cochran*, ¶ 26.

{¶ 60} Regarding Ahmad's assertions about Wolpert's credibility, we defer to the trial court's credibility assessment. Wolpert stopped Ahmad in May of 2004, six years

before trial, and we cannot conclude that his failure to remember specific details regarding the stop after the passage of so much time impugns his credibility. We note that the municipal court found Ahmad not guilty of the seatbelt violation after Wolpert stated he could not specifically remember if Ahmad was properly restrained. While Ahmad asserts that Wolpert's testimony was inconsistent regarding the vehicle to which the plates belonged, we note that Wolpert stated on direct that the plates were on the Cadillac but "came back" to the Buick. On cross-examination, defense counsel confused the vehicles, asking first, "And so you only found out that that plate belonged to a Cadillac by using that computer system," and then, " "And who is the registered owner of the eighty-eight Buick that Mr. Ahmad was driving?" Near the close of cross-examination, Wolpert again stated that he stopped the vehicle after the plates "came back to a Buick."

{¶ 61} Having reviewed the entire record, weighed all the evidence and all reasonable inferences, we cannot conclude that Ahmad's convictions for two counts of driving under suspension are against the manifest weight of the evidence. It is undisputed that Ahmad's license was under numerous suspensions, and Ahmad testified that he was in the driver's seat of the Cadillac, with the key in the ignition, when approached by Wolpert regarding the improper license plate. Accordingly, Ahmad's second assigned error is overruled, and his convictions for driving under suspension are affirmed.

{¶ 62} The first assignment of error having been sustained, Ahmad's conviction for operating a motor vehicle bearing an invalid plate is reversed and vacated. In all other respects, the judgment of the municipal court is affirmed.

. . . . . . . . . .

HALL, J., concurs.

GRADY, P.J., concurring:

**{¶ 63}** In *State v. Cochran,* Montgomery App. No. 22240, 2008-Ohio-3612, we held that the definition of "operate" in R.C. 4511.01(HHH) may be satisfied by "circumstantial evidence that the accused operated the vehicle to bring it to the place where it was found." *Id.*, ¶25. In *Cochran*, there was no evidence that the defendant had been seen moving the vehicle concerned, a van. ¶11. However, there was evidence that the defendant was found seated in the driver's seat of a van that was parked along a roadway, "with the van running and the keys in the ignition." ¶7. We reasoned that such circumstantial evidence was sufficient to overcome the lack of any direct evidence that the defendant was seen moving the vehicle, a matter on which the defendant relied to challenge the manifest weight of the evidence supporting his conviction. We cited the holding in *State v. Jenks* (1991), 61 Ohio St.3d 259, that circumstantial evidence and direct evidence inherently possess the same probative value and therefore should be subject to the same standard of proof." Paragraph one of the Syllabus by the Court.

**{¶ 64}** *Jenks* overruled *State v. Kulig* (1974), 37 Ohio St.2d 157, which had held that "[c]ircumstantial evidence relied upon to prove an essential element of a crime must be irreconcilable with any reasonable theory of an accused's innocence in order to support a finding of guilty." Syllabus by the Court. *Kulig* viewed circumstantial evidence as having a lesser probative value than direct evidence in relation to the burden imposed by reasonable doubt standard. *Jenks* instead held that "proof of guilt may be made by circumstantial evidence as well as by real and direct or testimonial evidence, or any combination of these

three classes of evidence. All three classes have equal probative value, and circumstantial evidence has no less value that the others. Circumstantial evidence is not less probative than direct evidence, and, in some instances, is even more reliable . . ." (Internal citations omitted.)

{¶ 65} "Probative" is an adjectival form of the word probate, which derives from the Latin term probatum, meaning "something proved." Probative evidence is evidence that tends to prove or disprove a point in issue. Black's Law Dictionary, Seventh Ed. *Jenks* held that circumstantial evidence is not inherently less probative than direct evidence, and therefore the two forms have the same capacity to prove or disprove a point in issue. However, that does not mean that any two articles of evidence have the same probative force, that is, the same weight. That is a qualitative factor determined by the credibility of its source and the logical character of its substance.

{¶ 66} In *Cochran*, the fact that the defendant was found in the driver's seat of a vehicle parked along a road with its motor running, logically supported a conclusion that the defendant had operated the vehicle for purposes of R.C. 4511.01 (HHH). Perhaps the evidence in the present case about the way in which Defendant was found has somewhat less of a logical connection with that conclusion. However, unlike *Cochran*, in the present case there was testimony by a officer that he saw Defendant driving the vehicle and that he followed the vehicle before stopping it. That is direct evidence that Defendant operated the vehicle in which he was found, and if believed it renders beside the point any issue concerning the way in which Defendant was found when his vehicle was stopped.

{¶ 67} Defendant attacks the credibility of the officer, but the alleged inconsistencies

in his testimony have no material bearing on the officer's statement that he saw Defendant operate the vehicle. The credibility of witnesses is a matter primarily for the trial court to decide. *State v. DeHass* (1967), 10 Oho St.2d 230. The trial court apparently believed the officer. I find no abuse of discretion in that respect, or in the court's finding of guilty.

. . . . . . . . . .

Copies mailed to:

Edward C. Utacht II
Andrea G. Ostrowski
Hon. Deirdre E. Logan