**[Cite as *State v. Loeber*, 2019-Ohio-5358.]**

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 28410 |
| | : | |
| v. | : | Trial Court Case No. 2018-TRC-8339 |
| | : | |
| JOHN M. LOEBER | : | (Criminal Appeal from Municipal Court) |
| | : | |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 27th day of December, 2019.

. . . . . . . . . . .

LINDSAY E. BOZANICH, Atty. Reg. No. 0097356, Assistant Prosecuting Attorney, City of Dayton Prosecutor's Office, 335 West Third Street, Room 372, Dayton, Ohio 45402
        Attorney for Plaintiff-Appellee

MICHAEL MILLS, Atty. Reg. No. 0092133, 371 West First Street, Second Floor, Dayton, Ohio 45402
        Attorney for Defendant-Appellant

. . . . . . . . . . . .

WELBAUM, P.J.

{¶ 1} Defendant-appellant, John M. Loeber, appeals from his conviction in the Dayton Municipal Court, following a bench trial, for operating a vehicle while under the influence of alcohol ("OVI"). In support of his appeal, Loeber contends that the State failed to present sufficient evidence that he operated a vehicle on the night in question while under the influence of alcohol. For the reasons outlined below, Loeber's conviction will be affirmed.

**Facts and Course of Proceedings**

{¶ 2} On October 7, 2018, Loeber received a citation charging him with two counts of OVI, one in violation of R.C. 4511.19(A)(1)(a) and the other in violation of R.C. 4511.19(A)(2). Loeber was also charged with operating a vehicle without a valid driver's license, driving under a financial responsibility law suspension, failing to reinstate his license, and driving under suspension. Loeber pled not guilty to all the charges and the matter proceeded to a bench trial. At the beginning of trial, the State advised the trial court that it was only moving forward with the two OVI charges and that it was going to dismiss the other four charges against Loeber.

{¶ 3} In proceeding with its case, the State presented testimony from Michael David Cox. Cox testified that at approximately 8:00 p.m. on October 7, 2018, he was smoking a cigarette on his front porch at 3225 Wellington Drive in Dayton, Ohio. Cox testified that while he was on his porch he observed a dark-colored, older-model SUV driving east on Wellington Drive at a speed of 10 to 15 miles per hour. Cox testified that the SUV was "ping-ponging" across the road and weaving into yards. Cox also observed the SUV drive through a stop sign and hit a curb. In addition, Cox testified that the SUV

almost hit a fence, light pole, and other vehicles parked in the street.

{¶ 4} During his testimony, Cox confirmed that he did not see the driver or the license plate number of the SUV. Cox testified that he also could not see the number of occupants inside the SUV. Cox testified that he observed the SUV's erratic driving for about 15 to 20 seconds before he called 9-1-1 to report the SUV to police. Approximately 30 to 45 minutes later, police officers arrived at Cox's residence to speak with him about the incident. Cox testified that he provided the police with a written statement, which was admitted into evidence as State's Exhibit 1. Cox's written statement read as follows:

> Driver was weaving across Wellington Drive. He hit a curb twice and went up into a couple of yards. Only driving between 10 or 15mph. Ran through a stop sign. I was afraid for public safety. Driving dark SUV 1990's Suburban or GMC.

State's Exhibit 1.

{¶ 5} The State also presented testimony from Officer Kyle Bonner of the Dayton Police Department. Bonner testified that on October 7, 2018, he responded to a report of a dark-colored GMC or Suburban SUV driving in an erratic, unsafe manner on Wellington Drive. Bonner also testified that he found a vehicle matching the description of the SUV observed by Cox only a couple of minutes after responding to Wellington Drive. According to Bonner, the SUV, a 1995 blue Chevy Suburban, was found parked in a suspicious manner in a nearby driveway located on Pell Drive. Bonner testified that Pell Drive is only a half mile away from Wellington Drive and is located in the same residential area.

{¶ 6} In describing the suspicious nature of how the SUV was parked, Officer

Bonner testified that the SUV was positioned at an angle with only the rear-passenger wheel on the driveway. Bonner testified that the SUV's front wheels were located in the residence's flowerbed and sidewalk leading to the front porch, while the rear-driver's-side wheel was located in the grass. Bonner also observed that the SUV's front bumper was hanging a few inches over the front porch. According to Bonner, the SUV's engine was not running.

{¶ 7} Officer Bonner testified that upon seeing the suspiciously-parked SUV, he pulled up behind the SUV to get its license plate number. After pulling up behind the SUV, Bonner observed someone, later identified as Loeber, sitting in the driver's seat with no other occupants present. Bonner testified that he then approached the vehicle and observed Loeber swing the driver's side door open and slowly attempt to exit the SUV. As a he approached the SUV, Bonner testified that he detected moderate odors of an alcoholic beverage and urine, and that the odors became stronger as he got closer to Loeber. Bonner testified that he had to help Loeber out of the SUV because Loeber was off balance. Bonner also testified that, when Loeber exited his vehicle, Bonner observed a urine stain on Loeber's pants where Loeber had relieved himself.

{¶ 8} Continuing, Bonner testified that after assisting Loeber out of the SUV, Loeber had difficulty standing on his own. Bonner testified that he and another officer had to catch Loeber from falling over and had to help him stand on his feet. Bonner also testified that Loeber's speech was slurred and that Loeber appeared confused.

{¶ 9} Because Loeber was unstable on his feet, Bonner testified that he placed Loeber in the back of his police cruiser so that he could speak to him. Before placing Loeber in his cruiser, Bonner performed a pat-down search to ensure that Loeber did not

have any weapons on his person. During the pat-down search, Loeber advised Bonner that the only item on his person was the keys to his SUV. Bonner testified that he retrieved the keys from Loeber's pants pocket after receiving Loeber's permission to remove them.

{¶ 10} Video footage from Bonner's cruiser camera, which was admitted as State's Exhibit 3, confirmed that once Loeber was in Bonner's police cruiser, Bonner advised Loeber of his *Miranda* rights. After Loeber waived his *Miranda* rights, Bonner then asked Loeber: "Where were you headed to tonight?" State's Exhibit 3. Loeber, who was speaking in a slow, confused manner, responded: "I was home, I was on my couch." *Id.* Bonner then explained to Loeber that he was found sitting in the front-seat of his SUV and again asks Loeber "where were you coming from * * * where were you going?" *Id.* In response, Loeber admitted to Bonner that he had come home from "St. Anthony's" where he had a "couple of beers." *Id.* Bonner testified that St. Anthony's was a church hosting a fish fry that evening.

{¶ 11} On cross-examination, Officer Bonner confirmed that he had never observed Loeber's SUV in motion. Bonner also confirmed that Loeber had never specifically stated that he had driven home from St. Anthony's, but only indicated that he had come home from St. Anthony's. Bonner, however, testified that because there was a witness who saw the SUV in motion, he decided to charge Loeber with OVI as opposed to a physical control violation.

{¶ 12} After presenting the foregoing testimony and evidence, the State rested its case. The defense presented no testimony or evidence, but moved for an acquittal under Crim.R. 29. The trial court granted the acquittal for the OVI charge under R.C.

4511.19(A)(2) on grounds that the State failed to establish that Loeber had an OVI conviction within the past 20 years. However, because the trial court found that there was sufficient circumstantial evidence establishing that Loeber had operated a vehicle while under the influence of alcohol, the trial court denied Loeber's Crim.R. 29 motion as to the OVI charge under R.C. 4511.19(A)(1)(a), and found him guilty of that charge. After finding Loeber guilty, the trial court sentenced Loeber to serve 180 days in jail with 60 days suspended. The trial court also suspended Loeber's driver's license for four years, placed him on basic probation for six months, and ordered him to pay a fine of $850.

{¶ 13} Loeber now appeals from his OVI conviction, raising a single assignment of error for review.

## Assignment of Error

{¶ 14} Under his sole assignment of error, Loeber contends that the State failed to present sufficient evidence supporting his OVI conviction. Specifically, Loeber argues that the State failed to establish the required element that he operated a vehicle on the evening in question. We disagree.

{¶ 15} "When a defendant challenges the sufficiency of the evidence, [he] is arguing that the State presented inadequate evidence on an element of the offense to sustain the verdict as a matter of law." *State v. Matthews*, 2d Dist. Montgomery No. 27718, 2018-Ohio-2424, ¶ 7, citing *State v. Hawn*, 138 Ohio App.3d 449, 471, 741 N.E.2d 594 (2d Dist.2000). " 'An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to

determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *Id.*, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 16} Here, Loeber was found guilty of operating a vehicle while under the influence of alcohol in violation of R.C. 4511.19(A)(1)(a). That statute provides: "No person shall *operate* any vehicle * * * within this state, if, at the time of the operation * * * [t]he person is under the influence of alcohol, a drug of abuse, or a combination of them." (Emphasis added.) R.C. 4511.19(A)(1)(a).

{¶ 17} The term "operate" is statutorily defined as "to cause or have caused movement of a vehicle, streetcar, or trackless trolley." R.C. 4511.01(HHH). "Notably, and in relation to movement of a vehicle, R.C. 4511.01(HHH) employs both the present tense ('to cause') and, alternatively, the past tense (to 'have caused'), in defining the conduct to which that section applies. The past tense indicates action already completed." *State v. Halpin*, 2d Dist. Clark No. 07CA78, 2008-Ohio-4136, ¶ 24. Therefore, "[f]or purposes of R.C. 4511.19, to 'have caused' movement of a vehicle is a fact that may be proved by circumstantial evidence, which inherently possesses the same probative value as direct evidence.' " *Id.*, citing *Jenks*.

{¶ 18} "Circumstantial evidence is proof of certain facts and circumstances from which a [factfinder] may infer other connected facts that usually and reasonably follow according to common experience." *State v. Sims*, 191 Ohio App.3d 622, 2010-Ohio-

6228, 947 N.E.2d 227, ¶ 19 (2d Dist.); *State v. Farley*, 2d Dist. Montgomery No. 24632, 2012-Ohio-1093, ¶ 17. If the State relies on circumstantial evidence to prove an essential element of an offense, it is not necessary "for such evidence to be irreconcilable with any reasonable theory of innocence in order to support a conviction." *Jenks* at paragraph one of the syllabus.

{¶ 19} On several occasions, this court has found the operation-of-a-vehicle element satisfied through the presentation of circumstantial evidence. *See, e.g., State v. Burnett*, 2018-Ohio-109, 109 N.E.3d 61, ¶ 3-4, 29 (2d Dist.) (finding sufficient evidence of operation where the investigating officer observed the defendant by himself in the driver's seat of a truck sunk in mud with "lots of tracks where the vehicle had been slipping and sliding around," "obvious marks where the truck had gone off the road," and "multiple tire patterns where the truck had gone back and forth and slid around"); *Dayton v. Ahmad*, 2d Dist. Montgomery No. 24165, 2011-Ohio-2302, ¶ 61 (finding sufficient evidence of operation where the defendant was found in the driver's seat of the vehicle with the key in the ignition); *State v. Cochran*, 2d Dist. Montgomery No. 22240, 2008-Ohio-3612, ¶ 6-7, 22-27 (finding sufficient evidence of operation where the defendant was found in the driver's seat of a vehicle that was running and parked in a grassy area off the road).

{¶ 20} In this case, when considering the video evidence and the trial testimony of Cox and Officer Bonner, a reasonable factfinder could have found that Loeber was operating the SUV shortly before Bonner arrived at his residence. Specifically, Cox's testimony and written statement established that Cox observed a dark-colored 1990s model SUV driving east on Wellington Drive in an erratic, reckless manner. Officer Bonner's testimony established that, shortly after Cox called 9-1-1 and reported what he

saw to police, Bonner located an SUV matching the description of the SUV observed by Cox parked in a suspicious manner on a residential driveway on Pell Drive, which is just a half mile east of Wellington Drive. Due to the matching description of the SUVs observed by Cox and Bonner, the direction and close proximity of the SUVs, and the suspicious manner in which the SUV found by Bonner was parked, it could be reasonably inferred that Bonner had located the SUV that Cox observed driving erratically on Wellington Drive.

{¶ 21} Although Cox could not identify who was driving the SUV, and despite Officer Bonner never seeing the SUV in motion, there was other circumstantial evidence in the record that would have permitted a reasonable factfinder to conclude that Loeber was the individual who had been operating the SUV in question. This includes, among other things, the fact that Bonner had found Loeber sitting in the driver's seat of the SUV by himself. Bonner also observed Loeber attempting to exit the SUV with urine-stained pants that contained the keys to the SUV shortly after the same SUV was seen in motion just a half a mile away. These facts permitted a reasonable inference that Loeber was the individual driving the SUV when Cox observed the SUV driving erratically on Wellington Drive.

{¶ 22} Although the video evidence established that Loeber initially told Officer Bonner that he had been inside his home on the couch when the officers arrived at his residence, the video indicates that Loeber then changed his story after Bonner explained that he had actually been found inside his vehicle. At that point, Loeber admitted that he had come home from "St. Anthony's" where he had a "couple of beers." State's Exhibit 3. Although Loeber's admission was that he had "come home" from St. Anthony's as

opposed to "driving home," we find it significant that Loeber never disputed the fact that he drove the SUV when Bonner subsequently discussed the driving under the influence charge with him. Loeber's lack of protest during their discussion supported the reasonable inference that, by admitting he had come home from St. Anthony's, Loeber was admitting he drove home.

{¶ 23} In an effort to demonstrate that the foregoing circumstantial evidence was insufficient to establish the operation element of OVI, Loeber attempts to analogize the facts of this case with the facts in *State v. Anderson*, 1st Dist. Hamilton No. C-160920, 2017-Ohio-8641, and *Cleveland v. Dumas*, 8th Dist. Cuyahoga No. 99558, 2013-Ohio-4600. In *Anderson,* the defendant was found unconscious sitting in the driver's seat of a vehicle that was turned off and parked in a parking lot. *Anderson* at ¶ 2-3. The keys to the vehicle were also in the ignition and the driver's-side door was open. *Id.* at ¶ 3. In *Dumas*, the defendant was found standing outside of his vehicle at a construction site. *Dumas* at ¶ 16-17. The courts in *Anderson* and *Dumas* found that the foregoing circumstantial evidence was insufficient to establish that the defendants had operated the vehicles in question.

{¶ 24} Upon review, we find that the facts in *Anderson* and *Dumas* are distinguishable from the present case. Unlike *Anderson* and *Dumas*, a witness observed a vehicle matching the description of Loeber's SUV in motion shortly before Officer Bonner observed Loeber sitting in the driver's seat of the SUV and exiting the vehicle. Furthermore, unlike the defendant in *Anderson*, Loeber was not unconscious, and unlike the defendant in *Dumas*, Loeber was observed sitting in the driver's seat of the vehicle.

{¶ 25} Loeber also cites several cases with different factual settings in an attempt

to argue what kind of circumstantial evidence would have been sufficient for the State to prove its case. However, these cases are immaterial, as it is only necessary to focus on what evidence was actually presented by the State. Here, when focusing on the evidence actually presented at trial, and when viewing that evidence in a light most favorable to the State, we find that there was sufficient circumstantial evidence presented to establish that Loeber had operated the SUV in question while under the influence of alcohol. Therefore, because there is no merit to any of Loeber's arguments, his sufficiency-of-the-evidence claim fails.

{¶ 26} Loeber's sole assignment of error is overruled.

## Conclusion

{¶ 27} Having overruled Loeber's sole assignment of error, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

HALL, J. and TUCKER, J., concur.

Copies sent to:

Lindsay E. Bozanich
Michael Mills
Hon. Carl Sims Henderson